1
2
3
4
5
6

**IN THE UNITED STATES DISTRICT COURT**

7

**FOR THE DISTRICT OF ARIZONA**

8
9

Michael Emerson Correll,                )        No. CV-13-1380-PHX-SMM (JZB)
                                         )
10                                        Petitioner,       )        **REPORT AND RECOMMENDATION**
                                         )
11       vs.                             )
                                         )
12                                        )
         Charles L. Ryan, et al.,        )
13                                        )
                                         Respondents.      )
14                                        )
                                         )
15  ─────────────────────────────────────)

16  TO THE HONORABLE STEPHEN M. MCNAMEE, SENIOR DISTRICT JUDGE:

17           Petitioner Michael Emerson Correll, who is confined in Arizona State Prison, has

18  filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.)

19  **I.      Procedural Background**

20                **a.  State Proceedings**

21           After a jury trial in 1984, Petitioner was convicted of three counts of first degree

22  murder, one count of attempted first degree murder, four counts of kidnapping, one count

23  of armed robbery, and one count of first degree burglary. *State v. Correll*, 715 P.2d 721,

24  724–25 (Ariz. 1986).[1]  Petitioner was sentenced to death for the three murder convictions

25  (Counts 1, 2, and 3).

26  ───────────────────

27           [1] The brutal nature of this offense is described in detail in *State v. Correll*, 715
28  P.2d 721, 724–25 (Ariz. 1986), and *Correll v. Stewart*, 137 F.3d 1404, 1408-10 (9th Cir.
    1998) ("*Correll I*").

After a direct appeal to the Arizona Supreme Court, Petitioner's sentence on Count 1 was reduced to life imprisonment. *Correll*, 715 P.2d at 738. The remaining convictions and sentences were affirmed. (*Id*.)

### b. First Habeas Proceeding

On September 15, 1987, Petitioner filed his first federal habeas corpus Petition. (2:87-CV-01471-SMM, Doc. 1.) On March 1, 1995, this Court denied the Petition. (*Id*., Doc. 134-35.) On March 9, 1998, the Ninth Circuit remanded the case for an evidentiary hearing regarding Petitioner's claim of ineffective assistance of counsel at his capital sentencing. *Correll I*, 137 F.3d at 1413–15. After a nine-day evidentiary hearing, this Court "concluded that the performance of Correll's attorney at sentencing was deficient but that Correll had suffered no prejudice." *Correll v. Ryan* ("*Correll II*"), 539 F.3d 938, 942 (9th Cir. 2008). Petitioner appealed, and the Ninth Circuit determined there was a "reasonable probability that the outcome of Correll's sentencing would have been different had he received competent representation." *Correll II*, 539 F.3d at 955. The Court concluded that Petitioner was "entitled to relief in the form of a new penalty phase trial." *Correll II*, 539 F.3d at 956.

### c. Resentencing Proceedings

### i. Request for Substitute Counsel

On June 10, 2009, Petitioner moved for a change of counsel because he had a difference of opinion regarding the "scope of representation" and he did not agree to waive "time limitations" for the capital resentencing. (Doc. 14-5 at 159.)[2] The court advised Petitioner that the appointment of new counsel would result in delay and asked if Petitioner would be "willing to waive time" if he received new counsel. (Doc. 14-3 at 122.) Petitioner responded: "No, Your Honor, I'm not. Under [Rule] 8.2, I'm entitled to a fast and speedy trial. I don't want to waive any time." (*Id*.)

---

[2] For ease of reference, the Court's citations to page numbers of documents in the record refer to EM/ECF page numbers.

At the next hearing on June 24, 2009, Petitioner's counsel stated they believed that the "attorney-client relationship [was] irretrievably broken." (Doc. 14-3 at 136.) The court told Petitioner that new counsel would also need additional time to prepare. (*Id.* at 131-33.) Petitioner responded, "Yeah, it's a problem. Well, Your Honor, I don't have an answer for you." (*Id.* at 138.) The court asked Petitioner if he objected to meeting with appointed counsel to determine if the case could be resolved by agreement with the prosecution. (*Id.* at 140-43.) Petitioner said, "Absolutely not." (*Id.* at 144.) At the end of the hearing, the trial court denied Petitioner's motion for change of counsel without prejudice. (*Id.* at 148.)

On August 20, 2009, Petitioner's counsel filed a motion to withdraw based upon an "irreparably fractured relationship" with Petitioner. (Doc. 14-3 at 152.) On August 25, 2009, at a "Resolution Management Conference," Petitioner also requested a change of counsel. (Doc. 14-3 at 153-55.) Although Petitioner did not want to delay sentencing, the court told Petitioner that preparation for capital sentencing typically lasted at least 18 months. (*Id.* at 165.) When asked what he hoped to achieve at the resolution conference, Petitioner stated that he wanted to "get death taken off the table" and "get concurrent 25-to-life sentences." (*Id.* at 166-67.) Counsel told the court that Petitioner did not want mitigation evidence disclosed to the prosecution or presented to a jury. (*Id.* at 168.) Counsel also stated if no mitigation evidence was presented, it was "almost a virtual certainty" that Petitioner would receive the death penalty again. (*Id.* at 170-71.) Petitioner acknowledged that he would need to accept a delay if new counsel was appointed. (*Id.* at 174-75.) The court denied Petitioner's motion, finding "that the conflict of issue [sic] would be present regardless of who is appointed, to handle the defense[.]" (Doc. 14-3 at 188.)

At a September 3, 2009 status conference, the trial court asked Petitioner if he was requesting to represent himself. (Doc. 14-3 at 192.) Petitioner responded, "At this time, your Honor, I'm going to pass on that and I will stay with counsel." (*Id.* at 192-93.) On

1   June 4, 2010, the court denied Petitioner's motion for reconsideration of the denial of

2   substitution of counsel.  (Doc. 14-4 at 30-39, 235.)

3                        **ii.  Self-representation**

4          From July 7, 2010 to November 19, 2010, Petitioner filed several *pro se* motions

5   related to the scope of remand and requesting transcripts.  (Doc. 14-5 at 10-36, 89-93,

6   107-115.)  The court granted a request for transcripts but denied the request to expand the

7   scope of remand.  (*Id*. at 126.)  Petitioner was advised that the court would only rule on

8   motions filed by counsel.  (*Id*.)

9          On January 12, 2011, Petitioner filed a "Motion for Substitution of Counsel."

10  (Doc. 14-5 at 150-54.)  That same day, Petitioner also filed "Defense Motion for Order of

11  Faretta Hearing and Self Representation" and submitted a waiver of counsel.  (Doc. 14-5

12  at 156-58, 163.) The court denied the motion for substitution of counsel stating that

13  Petitioner had "raised the same issues that were raised before. . . ."  (*Id*. at 167.)

14  Petitioner then requested to represent himself.  (*Id*. at 168.)  The trial court accepted

15  Petitioner's waiver of counsel after informing him of the dangers of self-representation.

16  (*Id*. at 168-74.)  Petitioner's attorneys remained on the case as advisory counsel.  (*Id*. at

17  170.)  On January 24, 2011, the State withdrew its notice to seek the death penalty.  (*Id*.

18  at 178.)  Petitioner agreed to have only one attorney remain as advisory counsel.  (*Id*.

19  188-189.)

20                          **iii.  Resentencing**

21         Prior to the sentencing of March 11, 2011, Petitioner filed a memorandum arguing

22  that he was entitled to resentencing on all counts.  (Doc. 14-6 at 2.)  Petitioner also

23  argued that the court was required to sentence him concurrently, on Counts 2 and 3, to

24  imprisonment of life with the possibility of parole after 25 years.  (*Id*.)  At the conclusion

25  of the sentencing hearing, the trial court sentenced Petitioner to natural-life imprisonment

26  on Counts 2 and 3, and ran those sentences consecutively to each other and to the life

27  sentence on Count 1. (Doc. 14-7 at 29-31.)

28

### d. Resentencing Appeals

After resentencing, Petitioner's appointed counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 451 P.2d 878 (1969), advising the Arizona Court of Appeals that counsel found no arguable issues to raise. (*State v. Correll*, No. 1 CA–CR 11–0188, 2011 WL 6747411, at *1 (Ariz. Ct. App. Dec. 22, 2011).) Petitioner subsequently filed a *pro se* brief asserting the following:

(1) The trial court should have granted a substitution of counsel based on the persistent assertions by both counsel and appellant of a broken relationship.

(2) Petitioner had a constitutional right to be present at every stage of proceedings.

(3) The court violated his right to counsel by forcing Petitioner to choose between conflicted counsel and self-representation.

(4) The court erred by not sentencing Appellant pursuant to A.R.S. § 13-752(N).

(5) The court erred in limiting the findings of ineffective assistance of counsel at sentencing to only two counts at appellant's death sentence remand.

(6) The court violated the Double Jeopardy Clause by resentencing appellant consecutively on Counts 1, 2, and 3.

(7) The court erred by not sentencing Counts 1 through 3 and 5 through 9 concurrently.

(8) The court illegally resentenced appellant on Count 1.

(9) Petitioner's due process rights were violated when he was not provided pre-sentence report and state supplemental sentencing motion until after sentencing.

(10) Consecutive sentencing for multiple murders violated the ex post facto clause.

(11) The court erred in denying a new trial for due process violations as new statutes had "Coleman" application to appellant's case.

(12) The court erred by not vacating judgment when presented with new evidence of actual innocence.

(13) Consecutive 25 to life sentences are unreasonable, excessive, and cruel and unusual punishment.

(Doc. 14-7 at 59-99.)

The Arizona Court of Appeals denied Petitioner's claims in a memorandum decision. *Correll*, 2011 WL 6747411, at *1. On August 29, 2012, the Arizona Supreme Court denied review without comment. (Doc. 14-7 at 158.)

### e. Post-Conviction Proceedings

On August 17, 2012, Petitioner's appointed counsel filed a "notice of completion of postconviction review," stating that counsel could not find any colorable claims to raise. (Doc. 14-7 at 167.) Petitioner subsequently filed a pro se PCR petition, raising the following claims:

> (1) Newly discovered material evidence requires Post Conviction Relief: Guy Snelling's false/perjured statements to the Court to influence resentencing.
>
> (2) Petitioner was denied his State and Federal constitutional rights to due process, effective assistance of counsel, confrontation, and a reliable sentencing determination and protection against cruel and unusual punishment as a result of prosecutorial misconduct involving the prosecution's reliance on and failure to correct false, untruthful, and/or perjured testimony by Guy Snelling.
>
> (3) Confrontation and due process violated when Petitioner was not given the opportunity to question Snelling on false/perjured influencing statements made at resentencing.
>
> (4) Counsel appointed to Petitioner's capital resentencing was ineffective, failed to raise issues and preserve record.
>
> (5) Appellate counsel was ineffective by raising no issues for appeal.

(*Id*. at 171-90.)

On February 3, 2013, the trial court denied the PCR petition. (Doc. 14-9 at 76.) On March 13, 2012, Petitioner raised the same claims in a petition for review filed with the Arizona Court of Appeals. (*Id*. at 78-86.) On July 3, 2014, the Arizona Court of Appeals denied Petitioner's petition for review in a memorandum decision, concluding that Petitioner's claims were precluded and failed on the merits. *State v. Correll*, No. 1 CA–CR 13–0157 PRPC, 2014 WL 3045474 (Ariz. Ct. App. July 3, 2014).

## II. Petitioner's Habeas Claims

### a. The Petition

On July 20, 2013, Petitioner filed the instant, timely habeas petition. (Doc. 1.)

Petitioner raises 21 grounds for relief challenging the resentencing proceedings, which were previously summarized by the Court:

(1)     Petitioner's Eighth and Fourteenth Amendment rights were violated when the sentencing court failed to sentence Petitioner in accordance with state law;

(2)     Petitioner's rights to counsel, access to the courts, and to be free from cruel and unusual punishment were violated when Petitioner was forced to choose between conflicted counsel and self-representation;

(3)     Petitioner's Sixth Amendment right to counsel was violated when the trial court denied Petitioner's request for substitution of counsel;

(4)     Petitioner was denied his Fifth and Sixth Amendment rights to be present at every stage of the proceedings;

(5)     Petitioner's right to be free from double jeopardy was violated when the trial court sentenced him to consecutive life sentences for counts one, two, and three;

(6)     Petitioner's Eighth and Fourteenth Amendment rights were violated when the trial court illegally sentenced Petitioner on count one;

(7)     Petitioner's Eighth and Fourteenth Amendment rights were violated when, during resentencing, the trial court limited its findings of ineffective assistance of counsel at the original 1984 sentencing to only two counts;

(8)     Petitioner was denied due process and a fair sentencing determination when the trial court used multiple murders to justify imposing consecutive sentences;

(9)     Petitioner's due process rights were violated when he was not provided with the presentence report and state's motion until after sentencing;

(10)    Petitioner's Fourteenth Amendment rights were violated when the state court failed to issue concurrent sentences;

(11)    Petitioner was denied due process when the state court denied a new trial;

(12)    Petitioner's rights to a fair trial and sentencing determination were violated when the trial court failed to vacate the judgment when presented with new evidence of actual innocence;

(13)    Petitioner's consecutive sentences violated his Eighth Amendment right to be free from cruel and unusual punishment;

(14)    Petitioner's rights to due process, confrontation of witnesses, and cross-examination were violated when false testimony was introduced at sentencing;

(15) Petitioner's rights to due process, a fair jury, and [a] fair sentencing determination were violated by the introduction of newly discovered material evidence at resentencing;

(16) Petitioner's rights to due process, a fair sentencing determination, and to be free from cruel and unusual punishment were violated by prosecutorial misconduct;

(17) Petitioner was denied his Sixth Amendment right to effective assistance of counsel when appointed counsel refused to discuss appellate options with Petitioner even though Petitioner expressed concerns about counsel's failure to preserve issues for appellate review;

(18) Petitioner's Sixth Amendment right to effective assistance of counsel was violated when he was forced to choose between his right to counsel and right to access to the courts;

(19) Petitioner's Sixth Amendment right to counsel was violated when counsel failed to preserve legal issues and argument for appellate review;

(20) Petitioner was denied the effective assistance of appellate counsel when appellate counsel failed to raise the issue of prosecutorial misconduct at sentencing; and

(21) Petitioner was denied effective assistance of appellate counsel when counsel refused to discuss appellate issues with Petitioner and did not raise a single appellate issue on direct appeal.

(Doc. 6 at 2–3.)

On July 29, 2014, Respondent filed an answer. (Doc. 14.) On January 6, 2015, Petitioner filed a Reply. (Doc. 28.)

**b. Exhaustion/Procedural Default**

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim").

A claim has been fairly presented if the petitioner has described both the operative

facts and the federal legal theory on which his claim is based. *See Id.* at 33. A claim has been "fairly presented" if the petitioner has described the operative facts and federal legal theories on which the claim is based. *Picard v. Connor*, 404 U.S. 270, 277–78 (1971); *Rice v. Wood*, 44 F.3d 1396, 1403 (9th Cir. 1995). "Our rule is that a state prisoner has not 'fairly presented' (and thus exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law." *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), amended on other grounds, 247 F.3d 904 (9th Cir. 2001).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See Coleman*, 501 at 731–32. Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297–99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).

Proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory upon which the claim is based. *See Picard*, 404 U.S. at 78 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

1

### c.  Merits Review

2        The writ of habeas corpus affords relief to persons in custody pursuant to the

3   judgment of a state court in violation of the Constitution, laws, or treaties of the United

4   States.  28 U.S.C. §§ 2241(c)(3), 2254(a).  Petitions for Habeas Corpus are governed by

5   the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).[3]  28 U.S.C. § 2244.

6   "[A] district court shall entertain an application for a writ of habeas corpus in behalf of a

7   person in custody pursuant to the judgment of a State court only on the ground that he is

8   in custody in violation of the Constitution or laws or treaties of the United States."  28

9   U.S.C. § 2254(a). Further, under the AEDPA, a federal court "shall not" grant habeas

10  relief with respect to "any claim that was adjudicated on the merits in State court

11  proceedings" unless it:

12          (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law,
13          as determined by the Supreme Court of the United States; or

14          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in
15          the State court proceeding.

16  28 U.S.C. § 2254(d).

17       Under 28 U.S.C. § 2254(d)(1), "clearly established Federal law" refers to holdings

18  of the Supreme Court in effect at the time the state court rendered its decision.  *Greene v.*

19  *Fisher*, 132 S.Ct. 38, 44 (2011); *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) ("A legal

20  principle is 'clearly established' within the meaning of this provision only when it is

21  embodied in a holding of this Court.").  A state court's decision is "contrary to" clearly

22  established precedent if (1) "the state court applies a rule that contradicts the governing

23  law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts

24  that are materially indistinguishable from a decision of [the Supreme Court] and

25  nevertheless arrives at a result different from [its] precedent." *Williams v. Taylor*, 529

26  U.S. 362, 405-06 (2000).

27  _____

28      [3] The AEDPA applies only to those cases that were filed after its effective date,
    April 24, 1996.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

"For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" *Harrington*, 131 S. Ct. at 785 (*quoting Williams*, 529 U.S. at 410).  A state court decision involves an "unreasonable application of" federal law if the court identifies the correct legal rule, but applies that rule to the facts of a particular case in an objectively unreasonable manner. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S.Ct. at 786-87.

### d.  Ground One – Failure to Sentence Under State Law

Petitioner asserts "he was illegally sentenced and denied due process when [the] sentencing court did not sentence Petitioner in accordance with state law" thus violating the Eighth and Fourteenth Amendments.  (Doc. 1 at 8.)  Petitioner requests that he be resentenced on all counts, not just the two death penalty counts reversed in *Correll II*. Petitioner's claim is not cognizable on federal habeas corpus review because it is a matter of state law.  *See Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982) (stating that a writ of habeas corpus is available under 28 U.S.C. § 2254(a) "only on the basis of some transgression of federal law binding on the state courts"); *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999) ("Federal habeas courts lack jurisdiction . . . to review state court applications of state procedural rules.").

Petitioner explicitly premised his argument in Ground One on the claim that the trial court was required to follow A.R.S. § 13-752(N).  Petitioner raised this precise claim before the Arizona Court of Appeals when he argued the "Court erred by not sentencing Appellant in accordance to governing A.R.S. § 13–752(N)."  (Doc. 14-7 at 71.)  In his Reply, Petitioner asserts the claim is cognizable because it violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  (*See* Doc. 28 at 18-19.)  Petitioner was not sentenced in excess of the statutory maximum, so *Apprendi* is not implicated.

11

Petitioner's claim is also unexhausted because he did not previously raise it as a federal claim. Petitioner argued that the trial court violated state law, and he cited to no federal cases or authority within his argument.  (Doc. 14-7 at 71-78.)   Petitioner did not claim a violation of the Eighth and Fourteenth Amendments, as he does now.   A petitioner must make the federal basis of a claim explicit by citing specific provisions of federal statutory or case law, even if the federal basis of a claim is "self-evident," *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), or by citing state cases that explicitly analyze the same federal constitutional claim. Thus, Ground One is unexhausted and procedurally defaulted because Petitioner cannot file another appeal or PCR on these issues in state court.  Under Rule 31.3, Ariz. R.Crim. P., the time for filing a direct appeal expires 20 days after entry of the judgment and sentence.  Moreover, no provision is made for a successive direct appeal.  Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims. Petitioner is also barred from raising his claims by Arizona's time bars.  Rule 32.4, Ariz. R. Crim. P., requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 912 P.2d 1357, 1360 (Ariz. Ct. App. 1995) (applying Rule 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).  That time has long since passed.

Finally, Petitioner's argument is meritless.  This Court's order to the trial court stated:   "IT IS HEREBY ORDERED that Petitioner's Writ of Habeas Corpus is GRANTED **as to his capital sentence** unless the State of Arizona initiates resentencing proceedings within a reasonable time no later than Friday, July 3, 2009." (*Correll v. Ryan*, No. CV-87-1471, Doc. 478 (D. Ariz. Feb. 19, 2009)) (emphasis added). The Arizona Court of Appeals affirmed the trial court's denial of Petitioner's request to resentence on all counts, finding "the specific prejudice identified is that the death penalty was imposed" and the "trial court properly limited Correll's resentencing to

counts two and three." (Doc. 14-7 at 147.)  Although it was not preserved, Petitioner's claim that this Court ordered a complete resentencing is belied by the record.

### e. Ground Two – Self-representation vs. Appointed Counsel

Petitioner asserts his rights (to counsel, access to the courts, and freedom from cruel and unusual punishment) were violated when the trial court refused to rule on his *pro se* motions while he was represented, and thus forced him to choose between "conflicted counsel and self representation." (Doc. 1 at 9.) Petitioner asserts that he attempted to file his own motions, but the court would not rule on those motions. (*Id*.) The trial court was not required to rule on his *pro se* motions while he was represented. A "defendant does not have a constitutional right to 'hybrid' representation" at trial. *United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994); *United States v. Halbert*, 640 F.2d 1000, 1009 (9th Cir. 1981) (stating that a criminal defendant does not have a constitutional right to hybrid counsel and that the district court has discretion to allow or deny hybrid representation).

Petitioner asserts in his Petition and Reply, that he was thus forced to choose between conflicted representation and self-representation. Petitioner's argument is predicated on the assumption that counsel was conflicted in Petitioner's representation. As explained in Ground Three, this claim fails. The Sixth Amendment does not guarantee a "meaningful relationship" between a client and his attorney. *Morris v. Slappy*, 461 U.S. 1, 14 (1983).  Petitioner disagreed with his counsel, but those disagreements (as explained in Ground Three) were not an irreconcilable conflict that amounted to a denial of counsel. Petitioner elected to represent himself, and he does not contest the knowing and intelligent nature of that choice. Petitioner's rights to access to the courts and freedom from cruel and unusual punishment were not violated.

### f. Ground Three – Denial of Request for Substitute Counsel

Petitioner asserts the court violated his "Sixth Amendment right to counsel by not granting a substitution of counsel." (Doc. 1 at 10.)  The Arizona Court of Appeals determined:

1
2
3
4
5
6

In denying Correll's motions, the court determined that the conflicts upon which Correll based his motions to change counsel would be present regardless of the attorney who was appointed to handle the defense. Furthermore, the court denied Correll's motion to change counsel after considering his motions and determining that the issues raised had been previously raised and denied in a prior motion to change counsel. The court did not abuse its discretion in doing so. *See Henry*, 189 Ariz. at 547, 944 P.2d at 62 ("[Defendant's] proclivity to change counsel lends strong support to the judge's decision.").

7    *Correll*, 2011 WL 6747411, at *2.

8
9
10
11
12
13

The state court's determination of this claim was neither contrary to nor involved an unreasonable application of clearly established Supreme Court law.  In determining whether the trial judge should have granted a substitution motion, this Court may consider the extent of the alleged conflict, whether the trial judge made an appropriate inquiry into the extent of the conflict, and the timeliness of the motion to substitute counsel.  *See, e.g.*, *Daniels v. Woodford*, 428 F.3d 1181, 1197–98 (9th Cir. 2005).

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, Petitioner's first conflict arose because Petitioner opposed any delay of his resentencing.  (Doc. 14-3 at 122.)  The trial court told Petitioner that trial counsel needed time to prepare for a capital sentencing, which was especially true in this case where ineffective assistance of counsel resulted in this resentencing.  The trial court correctly determined that Petitioner would have this conflict with any attorney.  The court told Petitioner "you are putting me in an impossible position. How can I give you a new lawyer and have them consult with you without waiving any time?"  (Doc. 14-3 at 122.) Petitioner also asserted he was entitled to resentencing on all counts despite the clear directive from this Court that resentencing occur only on his capital sentences. No competent attorney would have agreed with Petitioner on this claim. Petitioner also disputed the investigation and disclosure of mitigation evidence. Counsel advised the court, " . . . Mr. Correll does not want and will not allow us to disclose any traditional mitigation to the State for purposes of – nor does he want any presented to the jury." (Doc. 14-3 at 168.)  Again, the trial court properly concluded "the conflict of issue would be present regardless of who is appointed, to handle the defense…." (*Id*. at 188.)

14

1    Because any competent attorney would thoroughly investigate and disclose mitigation

2    evidence, the trial court properly denied Petitioner's request for a change of counsel. "It

3    may be the case, for example, that because the conflict was of [the defendant's] own

4    making, or arose over decisions that are committed to the judgment of the attorney and

5    not the client, in fact he actually received what the Sixth Amendment required in the case

6    of an indigent defendant."  *Schell v. Witek*, 218 F.3d 1017, 1026 (9th Cir. 2000).  The

7    conclusion that the trial court did not violate Petitioner's Sixth Amendment right to

8    counsel by denying a pretrial motion for appointment of new counsel was not contrary to

9    or an unreasonable application of clearly established federal law as determined by

10   Supreme Court.[4]

11            **g.  Ground Four – Right to Be Present During Conference with the Court**

12           Petitioner asserts the trial court improperly held an in camera conference with the

13   prosecution and "without pro-per Defendant" being present.  (Doc. 1 at 11.)  The Arizona

14   Court of Appeals found no violation, writing:

15           Correll states that he was left in the courtroom during this
        conference, and that after the conference, one of Correll's advisory
16      counsel was removed. He implies that this removal was motivated
        by some occurrence during the conference that could have biased or
17      prejudiced the court against him. At the February 4, 2011 hearing in
        question, the State withdrew its notice to seek the death penalty.
18      Because the death penalty was no longer on the table, the court
        removed one of Correll's advisory counsel. Furthermore, Correll did
19      not object to advisory counsel's actions on his behalf in the in
        camera proceedings either at the hearing on February 4, 2011, or in
20      his motion for modification of sentence and to vacate judgment.
        Advisory counsel did not participate "over the defendant's
21      objection"; thus, Correll's *Faretta*[5] rights were not eroded.

22   *Correll*, 2011 WL 6747411, at *7

23           The state court's determination of this claim was neither contrary to nor involved

24   _____

25       [4] Petitioner repeatedly asserts in his Reply that the conflict arose over Petitioner's
     desire to "create a record for appellate review" (Doc. 28 at 22) and "preserve the record
26   for appeal" (*Id*. at 25). This Court has addressed the merits of each claim and found the
     claims to be meritless. Trial counsel was not ineffective for failing to raise meritless
27   arguments (e.g. resentencing on all counts, double jeopardy, consecutive sentencing, new
     trial, and cross-examination at sentencing) and Petitioner has not suffered prejudice.

28       [5] *Faretta v. California*, 422 U.S. 806, 819–20 (1975).

                                                    15

an unreasonable application of clearly established Supreme Court law. The Court in *McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) found that *Faretta* imposed two distinct limitations on the unsolicited participation of standby counsel: (1) "the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury;" and (2) "participation by standby counsel without the defendant's consent should not be allowed to destroy the jury's perception that the defendant is representing himself." *McKaskle*, 465 U.S. at 177. The *Faretta* right is eroded when "standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance." *Id.* at 178.

Here, Petitioner did not have a right to be present when the trial court dismissed one of his advisory counsel after the death-penalty allegation was withdrawn. Petitioner did not object to advisory counsel's participation at the time.  Importantly, Petitioner presents no prejudice that flowed from this conference. The conference did not affect his control over the case and there was no jury.  Petitioner's claim is meritless.

### h.  Ground Five – Consecutive Sentences Violated Double Jeopardy

Petitioner asserts that the court violated his right "to be free of double jeopardy" by ordering consecutive sentences on Counts 1, 2, and 3.  The Arizona Court of Appeals rejected this claim, stating, (1) "we reject the proposition that the original death sentences were designated as either concurrent or consecutive," and (2) there was no abuse of discretion when the trial court found "the horrific nature of the crimes, the fact that there were multiple victims, and Correll's extensive criminal history" warranted consecutive sentences.  *Correll*, 2011 WL 6747411, at *3.

Here, Petitioner claims that Counts One, Two, and Three "were made concurrent by virtue of the state law in existence at the time." (Doc. 1 at 12.) The Arizona Court of Appeals determined that Petitioner's original sentences, under state law, were not designated as concurrent sentences.  Federal habeas relief is not available for alleged

errors in the interpretation or application of state law, including statutes regarding imposition of sentences. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (stating that "federal habeas corpus relief does not lie for errors of state law"); *Cacoperdo v. Demosthenes,* 37 F.3d 504, 507 (9th Cir. 1994) (finding that petitioner's claim that the state court erred in imposing consecutive sentences was not cognizable in federal habeas). It is beyond cavil that consecutive sentencing is not a violation of federal law. *See Tanner v. McDaniel*, 493 F.3d 1135, 1144 -1145 (9th Cir. 2007) (affirming "sentence of two consecutive terms of life without parole").

### i. Ground Six – Resentencing on Count One Violated Fourteenth Amendment

Petitioner asserts "existing state law governing capital remand for resentencing is controlling and that he mandatorily should have been resentenced on all counts accordingly with A.R.S § 751 and § 752(N)." (Doc. 1 at 13.) This claim repeats the claim presented in Ground One ("Petitioner was required by statute to be completely resentenced on all counts of the original sentencing") (Doc 1 at 8). As explained above, this claim is not cognizable, unexhausted, and meritless.

### j. Ground Seven – Petitioner Entitled to Resentencing on All Counts

Also similar to Ground One, Petitioner asserts a denial of due process when "the sentencing court limited its findings of ineffective assistance of counsel at the original 1984 sentencing to only two counts at Petitioner's death sentence remand." (Doc. 1 at 14.) Here, Petitioner claims the trial court misinterpreted the scope of the remand from federal court.

Petitioner failed to raise this issue as a federal claim in the Arizona Court of Appeals. Petitioner now claims violations of the Eighth and Fourteenth Amendments, but he did not assert these violations in the Arizona Court of Appeals. Petitioner has procedurally defaulted on this claim. *See Hiivala v. Wood*, 195 F.3d 1098 (9th Cir. 1999) (holding that petitioner failed to exhaust federal due process issue in state court because petitioner presented claim in state court only on state grounds). Petitioner presents no

1    cause to excuse the default.

2         Petitioner's claim is also meritless.  Petitioner's writ was granted regarding his

3    two capital sentences.  The Ninth Circuit Court of Appeals "conclude[d] that Correll is

4    entitled to relief in the form of a new penalty phase trial. We reverse the judgment of the

5    district court and remand with instructions to issue a writ of habeas corpus."  *Correll II*,

6    539 F.3d at 956.  Petitioner was entitled to a "penalty phase trial" for only his capital

7    counts.  As noted under Ground One, this Court ordered that Petitioner was entitled to

8    relief on his two capital counts.  The Court of Appeals properly interpreted this Court's

9    clear direction. "Thus, the specific prejudice identified is that the death penalty was

10   imposed. This prejudice, by definition, only applied to the capital counts."  *Correll*, 2011

11   WL 6747411, at *4.  The trial court properly resentenced Petitioner on Counts Two and

12   Three, which was not a violation of clearly-established federal law. Federal law does not

13   require resentencing when the sentence in one count is vacated.  *See United States v.*

14   *McKnight*, 17 F.3d 1139, 1145 (8th Cir. 1994) (vacating each of three defendants'

15   convictions on a false misrepresentation count, but determining that remand for

16   resentencing on that count was unnecessary since the sentences "were ordered to be

17   served concurrently to the sentences on the other counts, now affirmed").

18        **k. Ground Eight – Use of Multiple-Murder Aggravating Factor Was**
19        **Error**

20        Petitioner alleges the trial court committed error when it "used multiple murders to

21   justify reason for consecutive sentences, violating the *ex post facto* finding of the original

22   direct appeal of the Arizona Supreme Court in 1986." (Doc. 1 at 15.)  In *State v. Correll*,

23   148 Ariz. 468 (1986), the Arizona Supreme Court held that, in Petitioner's capital case,

24   the multiple-murder aggravating factor (A.R.S. § 13–703(F)(8)) could not be upheld

25   because it was implemented after the murders were committed. "In the instant case, we

26   find that the trial judge applied the new aggravating circumstance to murders which

27   occurred before the effective date of this aggravating circumstance" in violation of the *ex*

28   *post facto* clause of both the federal and state constitutions.  *Correll*, 148 Ariz. at 482.

Here, Defendant was not resentenced under the capital sentencing statute. Because the capital, multiple murder statute was not used in Petitioner's sentencing, it could not have justified "a reason for consecutive sentences."  In his Reply, Petitioner asserts that the use of this factor as "an aggravator" was an *ex post facto* violation.  (Doc. 28 at 41.)  Again, it was only a violation in the context of a capital resentencing, not in Petitioner's non-capital resentencing.

**l.   Ground Nine – Non-Disclosure of Updated Presentence Report/Motion**

Petitioner contends his due process rights were violated when he was not provided "a copy of the updated pre-sentence report."  (Doc. 1 at 16.)  He claims that he had a "right to defend against anything in the updated pre-sentence report."  (*Id*.)  Prior to the 2011 resentencing, the trial court ordered a supplemental presentence report for the purpose of obtained a time-served calculation.  *Correll*, 2011 WL 6747411 at *5.  The Arizona Court of Appeals reviewed the "criminal history" of the original presentence report and the supplemental report and found "no discrepancies" between the reports.  *Id.* The court  "reviewed the three-page criminal history prepared for the 2011 sentencing" and determined "the only purpose we can discern for this supplemental presentence report was to obtain the total amount of time served to potentially offset the sentences that would be rendered."  *Id*.  Because there was nothing "to defend against" in the updated report that was not in the previously-disclosed report, Petitioner's rights were not violated.  Petitioner was also present, and did not object, when the court referred to Petitioner's "three robbery convictions."  (Doc. 14-7 at 30.)

Petitioner also asserts that he was not provided a copy of the "state's supplemental sentencing memorandum" until a day after sentencing. (Doc. 1 at 16.)  The prosecutor submitted a sentencing memorandum and Petitioner filed a response to that memorandum.  (Doc. 14-7 at 2.)  Subsequently, the prosecution filed a three-sentence

supplemental memorandum, which is the subject of Petitioner's argument.[6]   The supplemental memorandum advised the trial court that the prosecution was not seeking resentencing on Count One because that count had already been reduced to lifetime imprisonment.[7]   Petitioner was not resentenced on Count One, and Petitioner does not state how he was prejudiced by the late receipt of this Supplemental Memorandum. There was no due process violation in the late disclosure of this document because Petitioner was aware the resentencing would affect only Counts Two and Three.  Petitioner has not argued he was prejudiced by the late disclosure.

### m. Ground Ten – Failure to Sentence Concurrently

Petitioner asserts that the trial court was required to run "Counts One through Three and Five through Nine concurrently."  (Doc. 1 at 17.)  Petitioner asserts that "Counts One through Three and Five through Nine, were all concurrent with Count One as a matter of law and the 1984 A.R.S. § 13–708 that mandated all sentences were mandatorily concurrent" unless the trial court made specific findings. (Doc. 1 at 17.) Regarding Counts One, Two, and Three, Petitioner's argument here mirrors that in Ground Five.  The Court again finds that federal habeas relief is not available for alleged errors in the interpretation or application of state law, including statutes regarding the imposition of sentences.

Petitioner's claim regarding Counts Five through Nine is       successive,       not cognizable, and meritless.  Petitioner asserts the "1984 sentencing judge . . . failed to specifically find that Counts Five through Nine would be consecutive to Counts One

---

[6] The Arizona Court of Appeals responded to an argument that Petitioner failed to receive the sentencing memorandum.  The record is clear that Petitioner received and responded to the sentencing memorandum. Because Petitioner argued in the Arizona Court of Appeals that he failed to receive the Supplemental Sentencing Memorandum (Doc. 14-7 at 85), the Court finds Petitioner exhausted this argument.

[7] The State's Supplemental Sentencing Memorandum reads: "The State of Arizona, by and through undersigned counsel, files this Supplemental memorandum to correct the request to resentence Defendant on the count relating to the murder of Debra Rosen. The State neglected to note that the Arizona Supreme Court had modified that sentence to life. However, that does not change the fact that all of the counts relating to the murders were made to run consecutive to one another." (Doc. 14-7 at 7.)

through Three." (Doc. 1 at 17.) Petitioner's original appeal to the Arizona Supreme Court concluded in 1986. Petitioner could have raised this issue in his first habeas proceedings that concluded in 2008. *Correll II*, 539 F.3d at 941. Petitioner was not resentenced on these counts, so the issue pertains to his 1984 sentencing. Petitioner did not obtain permission to file a successive petition. *See* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."); *Burton v. Stewart*, 549 U.S. 147, 157 (2007) ("The long and short of it is that Burton neither sought nor received authorization from the Court of Appeals before filing his 2002 petition, a 'second or successive' petition challenging his custody, and so the District Court was without jurisdiction to entertain it.").

Petitioner alleges the trial court "failed to follow the sentencing laws that protected Mr. Correll (1984 A.R.S 13-708). . . ." Petitioner's claim regarding state law is not cognizable. *See Miller v. Vasquez*, 868 F.2d 1116, 1118–19 (9th Cir. 1989) (refusing to consider alleged errors in violation of state sentencing law). Petitioner's claim also lacks merit because the trial court stated its reasons for imposing consecutive sentences. The court stated, "Pursuant to A.R.S. 13-708, I state the following reasons for imposing consecutive sentences . . . ." (Doc. 14-3 at 66.)

**n. Ground Eleven – Denial of New Trial was Error**

Petitioner contends he was entitled to a new trial when he was resentenced by a judge who did not preside over the trial. Petitioner contends that "the new statutes A.R.S. § 13–751 and 752 had '*Coleman*' due process applications" to his case. *See Coleman v. McCormick*, 874 F.2d 1280, 1288 (9th Cir. 1989) (finding "that retroactive application of the narrowed death penalty statute deprived the defendant of due process because he 'had no reason to suspect that his decisions at trial would come back to haunt him at a sentencing hearing'"). The Arizona Court of Appeals concluded that "Correll was not facing the death penalty during his resentencing; the State had withdrawn its notice to

21

seek death.  Accordingly, the due process concerns at issue in *Coleman* are not implicated in Correll's case." *Correll*, 2011 WL 6747411, at *5.

There was no error in denying Petitioner a new trial on this basis.  *Coleman* applied to capital resentencing.  Petitioner did not face capital resentencing.  The nature of capital sentencing implicated due process concerns in *Coleman*, which is distinct from other sentences. *See Coleman*, 874 F.2d at 1288 ("The finality and severity of a death sentence makes it qualitatively different from all other forms of punishment.").

Petitioner's claim also fails because it does not allege a violation of clearly established federal law.  Pursuant to 28 U.S.C. § 2254(d), a petitioner is not entitled to habeas relief on any claim adjudicated on the merits in state court unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  The holding of *Coleman* is not a decision of the Supreme Court of the United States.

### o.  Ground Twelve – Actual Innocence

Petitioner claims "the court erred by not vacating judgment when presented with new evidence of actual innocence." (Doc. 1 at 19.) In his Reply, Petitioner further recounts evidence (including Snelling's own statements) impeaching Snelling's testimony that Petitioner fired a murder weapon.  (Doc. 28 at 49-53.)

Petitioner was entitled only to resentencing on Counts Two and Three. This claim, which attacks the merits of his conviction, is a claim he could have raised previously. *See Cooper v. Calderon*, 274 F.3d 1270, 1273 (9th Cir. 2001) (stating that, "[g]enerally, a new petition is 'second or successive' if it raises claims that were or could have been adjudicated on their merits in an earlier petition."). The Court is without jurisdiction to entertain successive claims. *See* 28 U.S.C. § 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to

1   consider the application.").[8]

2       Respondents argue that Petitioner's claim is not cognizable in these proceedings

3   under *Herrera v. Collins*, 506 U.S. 390 (1993).  The United States Supreme Court has not

4   held that a "freestanding" claim of factual innocence, i.e., one unaccompanied by a

5   substantive claim of constitutional error in trial proceedings, provides a basis for federal

6   habeas relief in a non-capital case.  If this claim were cognizable, the threshold would be

7   "extraordinarily high." *Herrera*, 506 U.S. at 417. Even if Petitioner met the AEDPA

8   standard, however, his circumstances would not satisfy the actual innocence standard

9   under *Herrera*. "[T]he *Herrera* majority's statement that the threshold for a freestanding

10  claim of innocence would have to be extraordinarily high, contemplates a stronger

11  showing than insufficient of the evidence to convict." *Carriger v. Stewart*, 132 F.3d 463,

12  476 (9th Cir. 1997) (en banc) (internal citations omitted).

13      Here, the evidence of Petitioner's guilt is substantial. Petitioner asserts there is

14  new evidence to undermine Guy Snelling's testimony that (1) Petitioner shot Snelling in

15  the head, and that (2) Petitioner was properly identified as an accomplice.[9]  First, even if

16  Petitioner did not fire the weapon, Petitioner was convicted as an accomplice.

17  Defendant's failure to fire a weapon is not evidence of actual innocence. Second,

18  impeachment evidence is insufficient to establish actual innocence. *See Calderon v.*

19  *Thompson*, 523 U.S. 538, 563 (1998) (stating that "impeachment evidence provide[d] no

20  basis for" finding a finding of actual innocence, noting that such evidence "is a step

21  removed from evidence pertaining to the crime itself").    Finally, even if this

22  impeachment evidence undermined Snelling's identification, there was substantial

23  evidence of Petitioner's guilt.   Co-defendant Nabors referred to Petitioner by his

24  _____

25      [8] As the Arizona Court of Appeals determined in 2011, "the convictions and the
26  underlying facts supporting those convictions have been reviewed and upheld in prior
    proceedings and are not presently before this court." (Doc 14-7 at 109-17.)

27      [9] Petitioner's claim is three sentences long. The facts and exhibits related to this
28  claim are detailed in the attachments. (*See* Doc. 14-6 at 31-251.) Respondents thoroughly
    recount the substance of the evidence presented in the exhibits. (*See* Doc. 14 at 50-51.)

nickname ("Rick") during the murders. (Doc. 14-1 at 38; 127-28.)   Petitioner's fingerprints and bootprints were connected to the murders. (Doc. 14-1 at 60; Doc. 14-2 at 62-63, 67-78, 84, 100-14.)  Defendant fled Arizona after the murders. (Doc. 14-1 at 132-33; Doc. 14-2 at 29-35, 50-53; 142-43.)  A recorded conversation between Petitioner and his brother contained statements by Petitioner strongly implicating his guilt. Petitioner told his brother "they don't know who I am" and that Snelling "won't be [alive] for long." (Doc. 14-3 at 10-12.)   Petitioner does not satisfy the actual innocence standard under *Herrera.*

### p.  Ground Thirteen – Eighth Amendment Claim

Petitioner argues that his consecutive sentences violate the Eighth Amendment because he did not commit a murder and the court believed lies told by witness/victim Guy Snelling, which resulted in an unjust sentence. (Doc. 1 at 20.)   Petitioner is not entitled to relief on either portion of this claim.  As detailed *supra*, Petitioner has not satisfied a claim of actual innocence.  Petitioner's claim that his sentence violates the Eighth Amendment is meritless. The Eighth Amendment of the U.S. Constitution guarantees that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The phrase "cruel and unusual punishments" includes sentences of incarceration that are grossly disproportionate to the underlying offense. *Lockyer,* 538 U.S. at 71–72.  A sentence of incarceration will be found grossly disproportionate only in the "exceedingly rare" and "extreme" case.  *Id.* at 72–73. As a first step in analyzing an Eighth Amendment claim, a court should conduct "a threshold comparison of the crime committed and the sentence imposed."  *Gonzalez v. Duncan*, 551 F.3d 875, 883 (9th Cir. 2008).  The court must "weigh the criminal offense and the resulting penalty in light of the harm caused or threatened to the victim or to society and the culpability of the offender."  *Id.* (internal punctuation removed).

Here, a comparison of the offense and the sentence imposed does not reveal an inference of gross disproportionality.  Petitioner's consecutive sentences were imposed for the most serious of offenses, including multiple counts of first degree murder.  *See*

24

*Solem v. Helm*, 463 U.S. 277, 290 n.15 (1983) (noting that "clearly no sentence of imprisonment would be disproportionate" for murder); *Harmelin v. Michigan*, 501 U.S. 957, 994–95 (1991) (holding that a sentence of life in prison without the possibility of parole for possession of 672 grams of cocaine imposed on a defendant without a prior felony conviction did not violate the Eighth Amendment). The Supreme Court has also concluded that individualized sentencing is not constitutionally required in non-capital cases, rejecting the argument that a sentence (other than death) is cruel and unusual solely because it is mandatory. *See Harmelin*, 501 U.S. at 994–95 ("We have drawn the line of required individualized sentencing at capital cases, and see no basis for extending it further.").

### q. Ground Fourteen – Denial of Right to Confrontation at Sentencing[10]

Petitioner asserts his rights to due process and confrontation were violated "through the introduction of material evidence and testimony of Guy Snelling" at sentencing. (Doc. 1 at 21.) The Arizona Court of Appeals determined this claim was precluded because Petitioner failed to raise it on appeal. *Correll*, 2014 WL 3045474, at *3. Procedural default occurs when a petitioner presented a claim in state court, but the state court did not address the merits of the claim because the petitioner failed to follow a state procedural rule. *See, e.g.*, *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991); *Coleman v. Thompson*, 501 U.S. 722, 727–28 (1991). "If a prisoner has defaulted a state claim by 'violating a state procedural rule which would constitute adequate and independent grounds to bar direct review . . . he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence.'" *Ellis v. Armenakis*, 222 F.3d 627, 632 (9th Cir. 2000), quoting *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994). Here, Petitioner could have raised this claim on direct appeal. Because he failed to properly

---

[10] In his Reply, Petitioner asserts "Grounds Fourteen thru Twenty One are presently unexhausted and before Arizona's Supreme Court for review of all post conviction claims, so Petitioner is unable to address any state court decision or these claims at this time." (Doc. 28 at 56.) Petitioner briefed these issues in his Petition, and this Court recommends they be found meritless.

present this claim in state court, it is procedurally defaulted. *See* Ariz. R.Crim. P., Rule 32.2. Petitioner has not presented cause or actual innocence to excuse the default.

Petitioner's claim is also meritless because he did not have a right to confrontation at sentencing.  Rule 39 of the Arizona Rules of Criminal Procedure provides that a victim has the "right to be heard" at sentencing and can exercise this right "by appearing personally, or where legally permissible and in the discretion of the court, by submitting a written statement, an audiotape or videotape." Ariz. R. Crim. P. 39(a), (b)(7).  In the proceeding, "the victim's right to be heard is exercised not as a witness, the victim's statement is not subject to disclosure to the state or the defendant or submission to the court and the victim not subject to cross-examination." A.R.S. § 13–4426.01. The defendant shall, however, "be afforded the opportunity to explain, support or deny the victim's statement." *Id*. Petitioner's claim that this procedure violated his right to confrontation is also directly contrary to clearly established federal law. The Confrontation Clause does not apply to sentencing proceedings. *See Williams v. New York,* 337 U.S. 241, 250–51 (1949); *United States v. Williams*, 41 F.3d 496, 499–500 (9th Cir. 1994) ("A sentencing judge may consider hearsay evidence without running afoul of the Confrontation Clause...."). "Due process requires that some minimal indicia of reliability accompany a hearsay statement." *United States v. Horvath*, 522 F.3d 904, 906 (9th Cir. 2008).  Victim Snelling's statements satisfy this standard for the reasons explained in Ground Twelve, which details the other evidence of guilt in the record.

### r.  Grounds Fifteen and Sixteen – Victim's Statements at Sentencing

In Ground Fifteen, Petitioner asserts that his due process and Eighth Amendment rights were violated when Guy Snelling "intentionally lied to the court and the record shows that Correll never actually killed any of the victims." (Doc. 1 at 22.)  In Ground Sixteen, Petitioner asserts the prosecutor committed misconduct by relying on these statements.  (*Id.* at 23.)  The Arizona Court of Appeals determined these claims were precluded because Petitioner failed to raise them on appeal.  *Correll*, 2014 WL 3045474, at *3. For the same reasons found in Ground Fourteen, the Court finds Petitioner

procedurally defaulted on these claims because he did not raise them in his state court appeal. The trial court's consideration of victim impact statements pursuant to Arizona Rule of Criminal Procedure 39 and the Arizona Constitution was also a matter of state law, which this Court does not review. *See Jackson v. Ylst*, 921 F.2d 882 (9th Cir.1990) (federal court has no authority to review state application of state law).

Regarding Ground Fifteen, the Court also finds that Petitioner's due process rights were not violated by Guy Snelling's statements. Taken as a whole, Guy Snelling and the prosecution did not assert to the sentencing court that Petitioner was the person who fired the murder weapon.   At sentencing, Guy Snelling made the following statements regarding the commission of the offense:   "Your Honor, I cannot comprehend how Correll and accomplices, committing premeditated, heinous, cold-blooded murder with no remorse can be considered for a life sentence where he can have a social life. . . . This man has no remorse for his murders he and his accomplice committed. . . . I witnessed the murder of Robin, Shawn and Debbie by Correll, and this is a fact . . . ." (Doc. 14-7 at 12-14.)   These statements do not identify Petitioner as the person who fired the weapon. Because victim Debra Rosen was not murdered in Snelling's presence (she was strangled in the mobile home after Petitioner and the codefendant left the other victims in the desert), Snelling could not have suggested he saw Petitioner kill Ms. Rosen.

Snelling also told the court: "The two murderers separated us in the trailer and brought us back together except for Debbie . . . . I was shot first . . . . And then I heard a shot. And I didn't see that, and then that was Shawn being shot. And then I saw Robin whimpering and crying, and she got shot and murdered. I saw that with my eyes." (Doc. 14-7 at 12-14.)   Here, Snelling did not identify Petitioner as the man who fired the weapon.   There is no evidence that the trial judge considered the victim impact statements improperly at sentencing.  *See United States v. Santana*, 908 F.2d 506, 507-508 (9th Cir. 1990) ("The district court therefore did not err in considering the victim impact statement at the time of sentencing Santana.").

Regarding Ground Sixteen, the prosecutor did not commit misconduct.   To

succeed on a claim of prosecutorial misconduct, a petitioner must prove that the prosecutor's remarks were improper and that they so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Smith v. Phillips*, 455 U.S. 209, 219 (1982) ("the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor"). The prosecutor advised the court there were subsequent statements by the victim that the victim was not certain who pulled the trigger of the murder weapon. The prosecutor stated:

> [W]hat he said was that at this point in time when they were talking to him was he didn't really know who shot him. He thought it was the defendant, but he couldn't say for certain…. when I met with him, told me that there was no question that Mr. Correll was there and participated…Whether he pulled the trigger or not, he clearly, based on the evidence, knew what was going to happen, did nothing to try to prevent it, and was involved initially in the robbery and kidnapping up to his neck. So he certainly deserves to suffer the consequences of those actions.

(*Id*. at 16.)

The statements of the prosecutor and Snelling establish that Petitioner and his accomplice murdered the victim. The prosecutor told the sentencing court that Petitioner made inconsistent statements, and did not ask the court to sentence Petitioner because he fired a weapon. The sentencing judge imposed consecutive sentences based upon the nature of the crimes, multiple victims, and Petitioner's three prior robbery convictions.[11] There is significantly more than a "minimal indicia" of reliability regarding Snelling's

---

[11] The Arizona Court of Appeals found:

> Further, the trial court explained that "the most significant reason" for why it imposed consecutive sentences was the offenses involved multiple victims. The only other factors the court considered were the "horrific nature" of the offenses and Correll's "extensive criminal history," neither of which Correll has ever denied. Therefore, the statement at issue did not influence the court in its determination of the appropriate sentences for the two counts of murder.

*Correll*, 2014 WL 3045474, at *2.

28

statements that Petitioner and his accomplice committed these murders.  Petitioner has not established misconduct by the prosecution, nor has shown that the state court's resolution of this claim was based on an unreasonable determination of facts, or that it was contrary to, or based on an unreasonable application of, clearly established federal law.

### s. Grounds Seventeen and Nineteen – Ineffective Assistance at Resentencing

In Ground Seventeen, Petitioner asserts he was denied "effective assistance of counsel" when court appointed counsel "refused to discuss appellate options with Mr. Correll on remand for capital resentencing . . . ." (Doc. 1 at 24.)  In Ground Nineteen, Petitioner asserts "counsel failed to preserve legal questions and argument for appellate review." (Doc. 1 at 26.)

On January 12, 2011, Petitioner elected to represent himself.  (Doc. 14-5 at 165, 173.)  Petitioner represented himself at a pretrial hearing on February 4, 2011 (Doc. 14-5 at 181) and at sentencing on March 11, 2011 (Doc. 14-7 at 10).  Petitioner cannot assert he was ineffective in representing himself.  *Faretta*, 422 U.S. at 834 n.46 ("a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'").  The Arizona Court of Appeals found that "[i]neffective assistance of advisory counsel is not a cognizable claim under Rule 32." *Correll*, 2014 WL 3045474, at *3.  This Court can only grant habeas relief if the "state court decision [was] contrary to, or involved an unreasonable application of, clearly established Federal law" or was based on an unreasonable determination of the facts.  *See Lockyer*, 538 U.S. at 71. Petitioner has not satisfied that burden.  Because Petitioner represented himself for two months prior to sentencing, he cannot claim prejudice based upon the conduct of his prior counsel.  *See Cook v. Ryan*, 688 F.3d 598, 609 (9th Cir. 2012) ("Even if Cook's pretrial counsel performed deficiently during the seven months he represented Cook (a contention we reject below), Cook could have corrected those errors once he decided to represent himself.  *Faretta* therefore

1   precludes Cook from complaining about the 'quality of his own defense.'").

2   **t. Ground Eighteen – Self-representation vs. Appointed Counsel**

3   Petitioner asserts, as he did in Ground Two, that "it was a violation of Mr.
4   Correll's Eighth Amendment rights to force him to choose between two equally protected
5   United States Constitutional rights" of counsel and self-representation. (Doc. 1 at 25.)
6   This is the same claim presented in Ground Two, and is denied for the reasons explained.

7   Petitioner also asserts "counsel for Correll should have objected and failed to
8   inform the Court" that Petitioner's rights were being violated. (Doc. 1 at 25.) First, as
9   explained in Ground Two, Petitioner did not have a right to hybrid representation.
10  Second, Petitioner made a knowing and voluntary choice to represent himself. Petitioner
11  does not assert otherwise. Petitioner's counsel was not ineffective for permitting
12  Petitioner to represent himself, which was Petitioner's fundamental right.  Petitioner's
13  claim is meritless.

14  **u. Ground Twenty – Ineffective Assistance of Appellate Counsel**

15  Petitioner asserts he was "denied effective assistance of appellate counsel" when
16  "appellate counsel failed to raise issues that the prosecutorial misconduct at Correll's
17  sentencing" violated his due process rights.  (Doc. 1 at 27.)  To succeed on a claim of
18  ineffective assistance of appellate counsel, Petitioner must show that (1) his appellate
19  counsel's performance fell below an objective standard of reasonableness, and (2) the
20  deficiency in appellate counsel's performance prejudiced him. *See, e.g.*, *Strickland v.*
21  *Washington*, 466 U.S. 668, 688, 692 (1984).  To establish prejudice the defendant "must
22  show a reasonable probability that, but for his counsel's unreasonable failure . . . he
23  would have prevailed on his appeal."  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

24  As explained in Grounds Fifteen and Sixteen, the Arizona Court of Appeals
25  correctly found there was no prosecutorial misconduct at resentencing.  Appellate counsel
26  was not ineffective for failing to present this claim.  *See Juan H. v. Allen*, 408 F.3d 1262,
27  1273 (9th Cir. 2005) (counsel cannot be ineffective for failing to raise a meritless
28  objection). Even if the prosecutor's statements were misconduct, the trial court did not

impose its sentences based upon Snelling's statements.  Petitioner failed to establish that he was prejudiced by the introduction of the victim's statements. *See Wildman v. Johnson*, 261 F.3d 832, 840 (9th Cir. 2001) ("[A]ppellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance when appeal would not have provided grounds for reversal.").

### v. Ground Twenty One – Ineffective Assistance of Counsel (*Ander's* Brief)

Petitioner asserts that appellate counsel was ineffective for failing to argue "clear issues in the record of prosecutorial misconduct, and the right to confront/cross-examine the state's witness on the untruthful false and/or perjured testimony . . . ." (Doc. 1 at 28.) As explained in Grounds Fifteen, Sixteen, and Twenty, there was no prosecutorial misconduct at sentencing, so counsel was not ineffective for failing to raise this issue on appeal. As explained in Ground Fourteen, Petitioner did not possess the right to cross-examination at sentencing, so counsel was not ineffective for failing to raise this issue on appeal. *See Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless." (citations omitted)).

The Arizona Court of Appeals denied Petitioner relief on this issue. "We determine that there was no right to question the victim, nor was there misconduct. Appellate counsel was not ineffective for failing to raise these issues on appeal." *Correll*, 2014 WL 3045474, at *3.  The court noted that "Correll filed a pro se supplemental opening brief on appeal in which he too, chose not to raise either of these issues." *Id.* at 3. The state court's rejection of those claims is neither contrary to, nor an unreasonable application of, federal law. *See Wildman v. Johnson*, 261 F.3d 832, (9th Cir. 2001) (dismissing petition after finding "state court's conclusions that Wildman was not denied effective assistance of appellate . . . was not clearly erroneous.").

Accordingly, Petitioner has not shown that the state court's resolution of his claims was based on an unreasonable determination of facts, or that it was contrary to, or

based on an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d).

## III.    Request for an Evidentiary Hearing

Under 28 U.S.C. § 2254(e)(2), a petitioner is entitled to an evidentiary hearing if he presents a "meritorious claim" and he exercised reasonable diligence in developing the factual record in the state proceedings. *Williams v. Taylor*, 529 U.S. 420, 434-37 (2000). A petitioner exercises the diligence necessary to preserve a claim if "the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Id*. at 435. Thus, to qualify for an evidentiary hearing, Petitioner must both: "(1) allege facts which, if proven, would entitle him to relief, and (2) show that he did not receive a full and fair hearing in a state court, either at the time of the trial or in a collateral proceeding." *Belmontes v. Brown*, 414 F.3d 1094, 1124 (9th Cir. 2005). No hearing is necessary, however, if this Court "is able to determine without a hearing that the allegations are without credibility or that the allegations if true would not warrant a new trial . . . ." *United States v. Navarro-Garcia*, 926 F.2d 818, 822 (9th Cir. 1991).

In his Motion for Evidentiary Hearing (Doc. 34), Petitioner submits the same arguments presented in the Petition as a basis for an evidentiary hearing. Based on its review of Petitioner's Motion and his claims, as set forth above, the Court finds that Petitioner has not made any allegations that, if true, would warrant habeas relief, and finds that his allegations are meritless. Accordingly, an evidentiary hearing is not warranted, and the Court recommends that Petitioner's Motion for Evidentiary Hearing be denied.

## CONCLUSION

Based on the above analysis, the Court finds that several of Petitioner's claims are procedurally barred from review and all fail on the merits.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Motion for Evidentiary Hearing (Doc. 34) be denied.

**IT IS FURTHER RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 15th day of October, 2015.

_____
Honorable John Z. Boyle
United States Magistrate Judge

33